UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

  v.                                    File No. 1:10-CR-119

LIBORIO CHAVEZ-ABALLAR,

      Defendant.
_____/

Sentencing

Before

THE HONORABLE ROBERT HOLMES BELL
United States District Judge
September 16, 2010

APPEARANCES

JOHN F. SALAN                      DONALD W. GARTHE
Assistant U.S. Attorney            3181 Prairie St., SW
P.O. Box 208                       Suite 110
Grand Rapids, MI 49501             Grandville, MI 49418
Attorney for Plaintiff             Attorney for Defendant

Also Present:  Ellen Donohue, Interpreter

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

Grand Rapids, Michigan

September 16, 2010

8:47 a.m.

-   -   -


P R O C E E D I N G S


THE COURT:  You may be seated.  Good morning, ladies and gentlemen.

This is the matter of <u>United States v. Liborio Chavez-Alballar</u>.  At least that's what I think this individual's name is, and this matter is our docket number 1:10-CR-119.  Mr. Salan represents the United States Attorney's Office.  Mr. Garthe by court appointment represents Mr. Chavez.  Ms. Donohue is here as the interpreter and has been so sworn.

A plea was tendered on June 16th of this year to Counts 1 and 2 charging Mr. Chavez with fraud and misuse of visa permits, 18 United States Code 1546(a).  It appears that certain misrepresentations and forgeries were engaged in to give Mr. Chavez what appeared to be valid documents at the time.

A plea agreement was accepted, the Court finding that under the rubric of the guidelines here, that the charge pled to at least on its face represents the seriousness of the

actual offense behavior.  This Court, however, felt strongly enough about this matter that it issued a notice of intent to depart upward under the sentence guidelines back here on August 31st after having reviewed at least preliminarily the presentence report.

A presentence report has been prepared here by Mr. Hoffman, and this Court has reviewed the same in anticipation of sentencing.  Does the government have anything it wishes to add to this presentence report?

MR. SALAN:  No, Your Honor.

THE COURT:  Anything to add or object to from this presentence report, Mr. Garthe?

MR. GARTHE:  No, Your Honor.

THE COURT:  Mr. Chavez, have you discussed and had read to you the substance of this presentence report in this matter?

DEFENDANT CHAVEZ-ALBALLAR:  Yes, sir.

THE COURT:  And are you satisfied with the representation of Mr. Garthe in this matter?

DEFENDANT CHAVEZ-ALBALLAR:  Yes, sir.

THE COURT:  Very well.  If there is nothing further, Mr. Garthe, you and your client can come to the podium and address the Court as to your remarks first, Mr. Garthe, and then your client's remarks.

MR. GARTHE:  Your Honor, on the issue of departure,

I did prepare a sentencing memorandum.

THE COURT:  You did, and thank you.

MR. GARTHE:  And I'm not going to read that to the Court and rehash that with the Court.  Basically I don't feel that under the guidelines or under the statutory factors of 3553 that there are grounds to warrant a departure because his use of a false identification was not so unusual or out of the heartland that it was not contemplated by the guidelines in this case.

Again, he was convicted in California.  He moved first briefly to Texas to work and then to Michigan to work back in 1993 or '94, and he felt that he would not be able to obtain employment here because of his prior record, so he obtained the false identification to be able to obtain employment.  This is not unusual for people who commit crimes who are from other countries, whether they come -- the crime is just coming here illegally or the crime is actually committing an offense, a criminal offense while they're here.

THE COURT:  But Mr. Garthe, your client had a warrant issued from Tulare County, California, in February of '94, did he not?

MR. GARTHE:  Apparently so, yes, Your Honor.

THE COURT:  And the warrant would have been issued in his lawful name, would it not?

MR. GARTHE:  Correct.

THE COURT:  But if he was using a false name with false documents in the state of Michigan, if he was stopped by a law enforcement officer, that warrant wouldn't show up on the false name he gave, would it?

MR. GARTHE:  That's correct.

THE COURT:  Very well.

MR. GARTHE:  And I don't know if it would have shown up on any LEIN machine or not.  It was a misdemeanor offense, apparently, in California, so whether that --

THE COURT:  A felony reduced to a misdemeanor for purposes of a plea.

MR. GARTHE:  For the failure to register on that, I thought that was a misdemeanor.

THE COURT:  The failure to register to the felony that was reduced to a misdemeanor would be a mis -- would be a -- I'm not sure whether it's a -- it was a -- I'm not sure. I'm not sure I can say it's a felony or a misdemeanor in California.  I know what it is in Michigan.

Excuse me.  Go ahead.

MR. GARTHE:  Yeah, I thought it was reported here, that it was in the presentence report, but I may be mistaken.

But Mr. Chavez, I don't even know if he went through that mental process of fine-tuning it that well.  He just explains to me that he felt because of the conviction, that he needed to change his name in order to remain here in the

United States and that's why he did so, which again is why -- how many are there in the United States that are supposedly illegal, many of those are using false papers.

THE COURT:  Does this warrant -- is this okay?

MR. GARTHE:  It's not okay, no.

THE COURT:  No.

MR. GARTHE:  We seldom -- you know, I think in my 20 years working here I don't know if I've ever had a case charged just with possession of false documents.  Usually it's being here illegally.  They also have false documents, but they never get charged with that.  I'm assuming in this case he was because he already had a state charge pending, a serious felony, and it was explained to me that the desire was to make sure he got deported because at one time he was legal here in the United States and the government needed two convictions for immigration offenses in order to assure his deportation.

So that was the intent of charging him federally with possession of false documents, and that's being accomplished.  He's going to be serving a lengthy -- or he is serving a lengthy prison term now for his crime here in Michigan, and upon completion of that sentence he will be deported by the U.S. government.

So the purpose of the charge and the purpose of sentencing, Your Honor, I feel is met by his deportation, and

not only should his sentence not be above the guidelines, but should run concurrent with his prison sentence in the state of Michigan.  He's 60 years old.  He will be at least probably 65 before he's released by the state of Michigan and then deported to the country of Mexico.  So I would ask the Court to sentence him within the guidelines and to run his sentences concurrent.  Thank you.

THE COURT:  Thank you.

Mr. Chavez, is there anything you would wish to say in this matter?

DEFENDANT CHAVEZ-ALBALLAR:  Yes, sir.  First of all, I apologize to you, Your Honor, with all respect for all that has happened and for having obtained the false documents that were not admitted in my name, issued in my name.  And once more I apologize, Your Honor.  I'm here and you know what you're going to do and that's all.  Thank you.

THE COURT:  Thank you.  Mr. Salan?

MR. SALAN:  I don't think we have anything further to add other than what I've put in my sentencing memorandum, Your Honor, but I do have, because I know the Court was having some question in its mind, I do have a copy of the failure to register complaint from Tulare County, California.  It is a misdemeanor, if the Court would like to see it.

THE COURT:  It is?

MR. SALAN:  Yes, it is.

THE COURT:  Okay.  I knew California did things differently.

MR. SALAN:  Yeah, a lot of things differently, unfortunately.

THE COURT:  A lot of things differently, okay. Okay.  Very good.

It's my understanding in 1977 Mr. Chavez, I think we're talking about his right name, Mr. Chavez came to the United States at least for -- he came in '73, apparently unlawfully to California in '73.  From '73 to '76 he moved back and forth.  In '77 he moved to the United States, presumably to California, what is called permanently.  From '77 to '93 he moved around to other states for employment purposes, but would return to California on completion of the seasonal work.  So from that I gather that for the last -- since 1977, for the last 33 years, Mr. Chavez has been a resident, I want to use that word carefully, of the United States.

Mr. Chavez, do you know any English?  Do you speak English?

DEFENDANT CHAVEZ-ALBALLAR:  A little, yes, sir.

THE COURT:  That's the problem.  That's precisely the problem.  He comes here illegally, he makes no effort to learn the English language, and then he asks for mercy from this Court.  This is incomprehensible.  This is part of our

national problem.

What would happen if one of us moved to Serbia and we decided we didn't want to understand the Serbian language, we were just going to live under the radar in Serbia?  Would that be fair to the country of Serbia?  Of course it would not be fair to the country of Serbia.  It would not be proper; it would not be right; it would just be patently illegal and immoral.

Now, in this case the Court is going to depart upward on a variance.  The variance is that this guideline that is used in this matter, this Court believes, does not by giving an adjusted offense level 6 at all account nor a criminal history level III account for the particular and peculiar situation that Mr. Chavez presents to the Court. Contrary to Mr. Chavez's very, very competent counsel, this Court believes Mr. Chavez had to have more in mind than getting a job at Nash Nurseries where all these people attest to the wonderful character of Mr. Chavez.

There was a warrant out for him.  He did not register as a sex offender.  He should have known, he would have known, he did know that he had to register, but refused to do so.  He knew he was here unlawfully in the United States.  And so the argument of, well, everybody gets forged documents and pays a couple hundred bucks on the streets in Chicago or wherever for forged documents just doesn't pass the

smell test in this case.

Not only that, but Mr. Chavez reverted to this despicable behavior of conducting criminal sexual conduct on minors, in this case despite all that time that had passed and despite the punishment he had received or was about to receive in California.  Here he is serving a sentence in Michigan paid for by Michigan taxpayers for child molestation.  That is just absolutely despicable in every sense of the word.

And Mr. Chavez is 60 years old and ought to know better.  He should have understood the first time that this was thoroughly, absolutely unlawful.  But he moves, he uses a different name, obviously must have surrounded himself with a different kind of people, and went right back to the same despicable behavior with children that he had gotten in trouble for in California.

Now, what does that have to do with the exact charge of fraud and misuse of visa permits?  What it shows is that here is an individual who can change his name with payment of money, can assume a new identity and can proceed on with a clean record, so-called, until somehow the new electronic evidence -- electronic fingerprinting discloses that this isn't Liborio -- this isn't Guadalupe Gonzalez-Torres.  This is Liborio Chavez-Alballar.

The sentence of this Court will be 18 months in the custody of the Federal Bureau of Prisons due to the nature and

circumstances of this offense and this history and characteristics that just repeat themselves.  This is a serious offense only in that it displays an absolute lack of any respect for law.

A just punishment means that there should be an adequate deterrent, but also the public should be protected, and that Mr. Chavez should -- we'll make an attempt to get him back to the country of Mexico by ICE as soon as possible.  The 18 months will be served concurrent with Kalamazoo Circuit Court No. 2028-FH, which is that felony conviction and behavior that brought him to the attention of the authorities.

A one-year period of supervised release following his release from custody will have one major requirement.  I don't know if it's possible, but we hope it will be, that he not be found in the United States without permission because Mr. Chavez does not want to be back before this Court again for having been found in the United States.

Of course Mr. Chavez is impecunious, so therefore, a fine will be waived.  The taxpayers of Michigan will pay the full shot on this one.  Mandatory special assessment of $200.

Do you wish to make your motion for remission, Mr. Salan?

MR. SALAN:  Not in view of the sentence he's serving, Your Honor.  He has the opportunity to earn that.

THE COURT:  Very well.  Very well.  Do you have a

motion as it pertains to Counts 3 and 4, Mr. Salan?

MR. SALAN:  I do, Your Honor.  We'd move to dismiss those.

THE COURT:  Motion to dismiss will be granted.

Any legal objection to the sentence imposed not previously raised, Mr. Salan?

MR. SALAN:  No, Your Honor.

THE COURT:  Not previously raised, Mr. Garthe?

MR. GARTHE:  No, Your Honor.

THE COURT:  You have a right of appeal from this sentence and this conviction.  You have 14 days in which to file that appeal.  Those forms have been provided to you to be returned should you desire an appeal from the sentence. You'll be remanded to the custody of the federal marshal to be turned over to the Michigan Department of Corrections to serve the sentence, again on the nickel of the Michigan taxpayers.

That's all.  Thank you, Mr. Garthe, for your representation of Mr. Chavez.  And Ms. Donohue, we appreciate your service again.  That's all.

(Proceedings concluded at 9:04 a.m.)

CERTIFICATE OF REPORTER


I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

I do further certify that the foregoing transcript was prepared by me.




/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503